WARNER K. BUSCH v. CITY OF DULUTH AND ANOTHER.

251 N. W. 2d 629.

February 25, 1977—No. 46195.

*Fitch & Johnson* and *Raymond W. Fitch*, for relators.
*Alfred J. Weinberg*, for respondent.

PER CURIAM.

The employer and insurer seek review of a decision of the Workers' Compensation Board awarding the employee benefits for continuing temporary total disability. On appeal relators concede the issue of causation between the employee's arteriosclerotic heart disease and his employment as a fireman, but challenge the evidentiary support for the board's finding of temporary total disability.

In June 1972 the employee experienced a momentary tightness in his chest which he ignored. In September 1972 he experienced a longer episode after which he made an appointment with Dr. Goldish. Dr. Goldish, an internist and cardiologist, examined the employee during a 3-day hospitalization. The employee's symptoms and test results indicated angina pectoris. Dr. Goldish diagnosed his condition as inferior wall myocardial ischemia. He described the process as not a rapidly accelerating one with no evidence of impending heart attack. His recommendations and treatment were as follows:

"I advised certain precautions regarding activity such as gradually doing some progressive strolling outdoors, to rest briefly after meals, to start working October 2nd, if all felt well, to maintain a low cholesterol diet and to take headache medications when tension headaches would occur, to take gelusil for prevention of ulcer and to use nitroglycerine for any recurrent chest pain, to take nitrate peritrate, S. A.

"I elected to avoid using anticoagulant drugs because of the possible danger of bleeding, which could occur on such drugs, incident to his occupation or history of peptic ulcer."

His recommendation that the employee return to work was based on his misconception that the job of fire captain was largely administrative or supervisory. With a realization of the job responsibilities[1] of a fire captain, he stated that this occupation was contraindicated.

The employee returned to work for one 24-hour shift and was then relieved of his duties as not physically fit. He has not worked or looked anywhere for work since that date.

The employee was 51 years old at the time of the compensation hear-

---

[1] A fire captain works 24-hours shifts. He has some administrative responsibilities such as conducting drills and maintaining paperwork. He must ascertain the location of a fire and get the proper equipment to the scene. He must appraise the severity of the fire, go into the building if lives are at stake, take the line into the building, and fight the fire until relieved.

ing. He has the equivalent of a high school diploma through the service. Prior to joining the Duluth Fire Department he worked as an oiler for U. S. Steel, a brakeman for the D. M. & I. Railroad and as a structural iron worker for various contractors. He was also employed by Little Theatre Groups as technical director for 8 years ending in 1972. He maintains a home for three of his children. He is divorced. Before leaving the fire department he had someone come in to take care of his children and the house when he worked. He is currently drawing $570 per month from the fireman's pension fund.

The employee has remained fairly active. He stated that maintaining the household occupies most of his time, but he reads and spends some of his leisure time at the Little Theatre playhouse. He walks a couple of miles without difficulty and bicycles regularly on the doctor's recommendation. He mows his lawn, removes the snow with a snowblower and some shoveling. He stated that he understands the disease process of the heart and that he cannot go as hard as he did in the past.

He states that he has no chest pain at the present time, but that he is not comfortable. He has prescribed medication, but has not had to take any.

Dr. Goldish last examined the employee in August 1974. His findings at that time reconfirmed his diagnosis of arteriosclerotic heart disease with angina pectoris. At the compensation hearing he was asked to give his opinion as to the employee's work potential. He responded that the employee was permanently disabled as a fire fighter. He then added the following:

"Q. What sort of duties could he perform within the limitations of his heart condition that you can think of now?

"A. I think he could be a truck driver. He could do occupations that involved sporadic lifting of 50 or 100 pounds from the floor to a table, but I would advise that he avoid occupations that might involve carrying 50 pounds or 100 pounds up say more than one flight of stairs at a reasonable pace.

"Q. Would there be any problems doing work which involved mental processes in a sitting position? I have in mind, like a steno or bookkeeper.

"A. Not except under the most extraordinary conditions and the answer would be I should expect he could do any sort of work like that."

Dr. Goldish added that the employee could work at any clerical-retail occupations or administrative work. He finally concluded with the following general appraisal:

"A. Yes. He could do all those things with the exception of any job requiring sudden severe outburst of energy, output or exposure to extreme environmental change or exposure to toxic fumes that might lead to cardiac difficulty."

Dr. John Fee was called as an expert by the employer and insurer. He agreed with the diagnosis of coronary heart disease. He added that he thought the employee could work in almost any capacity other than fireman.

The employee stated that he has been willing at all times to work at something within his physical limits. He was asked the following questions by the compensation judge:

"THE COURT: Is there any specific reason why you wouldn't look around for work, if you could?

"THE WITNESS: There probably wouldn't be, but the reason, of course, I haven't is because this is all pending and I have been raising my family. I haven't been asked by anyone and when I talked with the Social Security Officer, he said I would be called upon to enter some type of school to prepare myself for something and I haven't heard from them and I've been busy at home.

"THE COURT: Has anybody ever advised you to contact the Rehabilitation Division of the State of Minnesota?

"THE WITNESS: No. He advised me he was going to contact me."

On the issue of disability the compensation judge made the following comments in his memorandum:

"The issue of disability is a problem in this case. No light work has been offered to the employee by the Fire Department. He is unable to work as a fireman. However, his physical condition is such that there are many jobs that he could perform after adequate retraining. The past two years have been spent primarily in taking care of the household and as a result the employee has made little attempt to find outside work. The only occupational background that might be used by the employee is one of creating stage settings for the local theatre group. The employee is being referred to retraining and continued on temporary total disability during that period of time."

The compensation board's comments are as follows:

"The medical testimony generally summarized is that the employee can do sustained light labor but cannot do heavy labor on a sustained basis. He endeavored to return to work with the fire department, but he was dropped because of his medical limitation. The City did not furnish him with lighter work. And the employee at the time of the hear-

ing did not actively seek further employment. At the hearing neither side really pursued any establishment of a rate of compensation based upon a percentage, under either Minn. St. 176.101, Subd. 2 or Subd. 3(46). The Judge awarded continuing temporary total. We concur. The employee, however, should make active contact with the Division of Vocational Rehabilitation. And also the desirability of the City of Duluth furnishing employment to the employee is firmly noted! If, following the needed efforts of both parties, the employee is merely desirous of drawing his pension and other benefits, and remaining unemployed, application for proper modification can be made to the Compensation Judge."

This appeal appears to be premature. We must therefore remand for the record to be completed, in light of the compensation board's instruction to the employee that he "make active contact with the Division of Vocational Rehabilitation" for retraining and its suggested "desirability of the City of Duluth furnishing employment."

The results of these pursuits must be known before this factual setting can logically lend itself to a meaningful opinion by this court under the law.

Remanded for proceedings consistent with this opinion.